*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0419p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

RICHARD D. BLAIR,

          *Plaintiff-Appellant,*

    *v.*

HENRY FILTERS, INC.,

          *Defendant-Appellee.*

No. 05-2437

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-70411—Nancy G. Edmunds, District Judge.

Argued: March 6, 2007

Decided and Filed: October 15, 2007

Before: BATCHELDER and MOORE, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Edward D. Plato, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellant. Thomas H. Williams, JAFFE, RAITT, HEUER & WEISS, Southfield, Michigan, for Appellee. **ON BRIEF:** Edward D. Plato, Marcelyn A. Stepanski, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellant. Thomas H. Williams, JAFFE, RAITT, HEUER & WEISS, Southfield, Michigan, for Appellee.

---

## OPINION

---

    KAREN NELSON MOORE, Circuit Judge. When a fifty-seven-year-old's direct supervisor taunts him as "the old man on the sales force," removes him from a profitable account because he is "too old," and tells another employee he "needs to set up a younger sales force" before terminating the employee, can the employee's age-discrimination claim survive summary judgment? We believe it can. Accordingly, we **REVERSE** the district court's judgment for the employer and **REMAND** this case for further proceedings.

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

## I. FACTS AND PROCEDURE

### A. Factual Background[1]

Richard D. Blair was born in October 1945 and began working at Henry Filters, Inc. ("Henry Filters") as a sales engineer in 1986. At its sole facility in Bowling Green, Ohio, Henry Filters manufactures and markets "industrial liquid filtration systems primarily for the machine cutting industry." Joint Appendix ("J.A.") at 74 (¶ 5). In 1998, Durr Ecoclean, a holding company, purchased all of Henry Filters's stock and became its parent company. Durr Ecoclean is also the parent company of Durr Automation and H.R. Black.

In 2000, John Tsolis became Henry Filters's Vice President of Sales and thus Blair's direct supervisor. Tsolis reported to Mark Jackson, the Vice President of Sales for Durr Ecoclean who was responsible for the sales activities at all three companies under the Durr Ecoclean umbrella. Jackson, in turn, reported to Daniel Zinger, the president and CEO of Durr Ecoclean.[2]

Zinger, Jackson, and Tsolis set out to restructure the sales teams of all three companies under the Durr Ecoclean umbrella. In 2001, they decided to consolidate the sales activities of all three companies. As part of this consolidation, management reassigned some employees. On April 4, 2001, Blair met with Tsolis and Brian Mahas, a thirty-three-year-old Henry Filters salesperson, in Tsolis's office. During this meeting, Tsolis said that Mahas would take over the Ford account from Blair, and Blair would take over the GM account from Mahas. Blair was unhappy with this change, as the Ford account had been profitable and he had enjoyed notable success working on it. The GM account, by contrast, had not been productive.

According to Blair, Tsolis said during this meeting that Blair was "too old" to work the Ford account because the Ford buyers were younger and engaged in youthful activities like mountain biking, and that because Mahas was younger and was a mountain biker, he would be a better fit.[3] J.A. at 176 (Blair Aff. ¶ 11). Blair further claims that Tsolis threatened him with termination if Blair told anyone the reason for this reassignment.[4]

Blair also claims that in the years leading up to his separation from Henry Filters, Tsolis repeatedly made derogatory comments regarding Blair's age. For instance, Blair contends that Tsolis regularly referred to him as "the old man" at sales meetings. J.A. at 117 (Blair Dep. at 46);

---

[1] Because we are reviewing a district court's entry of summary judgment, we describe the facts in the light most favorable to the plaintiff, resolving all factual disputes in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where a material fact is disputed, we highlight the dispute in the footnotes.

[2] The record reflects some confusion regarding Tsolis's present position. The district court concluded that Jackson replaced Tsolis as Henry Filters's Vice President of Sales. In his affidavit, Tsolis identified his title merely as "Vice President." J.A. at 98 (Tsolis Aff. ¶ 3). However, Jackson identified Tsolis's present position as Vice President of Sales for Henry Filters, which indicates that Jackson did not replace Tsolis. The best reading of the record indicates that Tsolis remains the Vice President of Sales for Henry Filters, while Jackson holds the identical title for Durr Ecoclean as a whole. In any event, this dispute is not material to our analysis of Blair's claims.

[3] Henry Filters disputes this characterization of the conversation. More specifically, Tsolis denies that he ever told Blair that he was "too old." Mahas testified that although he attended the meeting in which he and Blair exchanged job assignments, he was never present when Tsolis said Blair was "too old." Blair disputes this contention. Henry Filters further disputes that Blair's age motivated this decision. Jackson claims that *he* decided to remove Blair from the Ford account, and that he did so because he wanted to have a "filtration expert within the General Motors structure." J.A. at 188 (Jackson Dep. at 43:25-44:11).

[4] Tsolis denies that he threatened Blair with termination if Blair spoke of the conversation.

175 (Blair Aff. ¶ 9). Similarly, at a meeting at the GM Purchasing Department, Tsolis once asked others in jest, "do you think the old guy can make it up the stairs?" J.A. at 177 (Blair Aff. ¶ 12).

Tsolis was, by virtually all accounts, a rather unpleasant character. He referred to himself as "The Terminator," a role that he appeared to relish. J.A. at 219 (Jill Ciszewski Aff. ¶ 5). Also, he frequently threatened to fire employees. Although these threats displeased Jackson, he never told employees that Tsolis lacked authority to carry them out.

At some point between 2001 and 2003, Henry Filters began to experience financial hardship and began to reduce its workforce in response. In total, between 2001 and 2003, sixty-seven employees were terminated and twenty-four more were not replaced, shrinking Henry Filters's payroll from 143 employees to fifty-two employees.[5] The record reflects neither a defined beginning date for, nor a clear plan for the execution of, this reduction-in-force.

In early August 2003, when Blair was on vacation, Tsolis called to tell him that Henry Filters was terminating Blair's employment.[6] Blair asked for an explanation, but Tsolis refused to provide one. Henry Filters sent Blair a letter outlining the terms of the separation, which became complete on August 31, 2003. The letter was dated August 1, 2003 and signed by Tsolis. Blair was fifty-seven years old when he lost his job. Around the time Henry Filters terminated Blair, it also terminated Roger Brodeur, a thirty-seven-year-old salesman, and Jill Ciszewski, Jackson's thirty-nine-year-old secretary.

After Blair's departure from Henry Filters, forty-two-year-old Buzz Benschoter took over Blair's accounts, but Henry Filters did not hire anyone to replace Blair immediately. Henry Filters, however, hired a man in his twenties to work in sales within four months of Blair's departure. The record does not indicate whether Henry Filters assigned this salesperson to any of Blair's former accounts.

Blair later learned that Richard Duncum, an employee at the Durr Ecoclean headquarters in Wixom, Michigan, had overheard a conversation between Tsolis and Jackson a few months prior to Blair's termination. At the end of that conversation, Tsolis emerged from Jackson's office and "made comments that he needed to set up a younger sales force . . . ." J.A. at 194 (Duncum Dep. at 28:16-18). Although Duncum is now confident that the remark referred to Blair, he did not hear Tsolis specifically mention Blair's name.

## B. Procedural Background

Blair filed his complaint on February 4, 2004, and filed an Amended Complaint (the operative complaint in this case) on August 27, 2004. Blair seeks recovery on five claims: age discrimination under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count 1); age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count 2); defamation (Count 3); invasion of privacy (Count 4); and declaratory judgment (Count 5). Each of the age-discrimination claims asserts discrimination based on two separate theories: discriminatory discharge and harassment.

---

[5] Neither party provides specific numbers for the jobs lost in Henry Filters's *sales department* or for the sales jobs lost among the three Durr Ecoclean companies.

[6] In its brief, Henry Filters contends that Blair had learned of the layoffs and had begun calling the office frantically. According to Henry Filters, Tsolis was merely returning one of Blair's calls when he delivered the news to Blair. This contention finds no support whatsoever in the Joint Appendix.

On July 6, 2005, Henry Filters moved for summary judgment. On September 26, 2005, the district court granted this motion and issued a separate judgment. The district court noted that Blair had voluntarily dismissed his claims for invasion of privacy and declaratory relief. Addressing his age-discrimination claims, the district court concluded that Tsolis did not have authority to terminate Blair and accordingly did not terminate him. On this basis, the district court concluded that Tsolis's statements were not evidence that the decision to terminate Blair was motivated by discrimination. Accordingly, it held that Blair had failed to set forth any direct or circumstantial evidence that he was fired because of his age, rather than for legitimate business reasons arising out of the reduction-in-force. The district court determined that Blair had failed to present any evidence that Tsolis's age-based communications created a hostile work environment. The district court also held that Blair's defamation claim was meritless.

Blair timely filed his notice of appeal. In his appellate brief, he challenges only the district court's conclusions regarding his age-discrimination claims, thereby abandoning his defamation claim.

## II. JURISDICTION

The district court had federal-question jurisdiction over Blair's ADEA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over his state-law claims, *id.* § 1367(a). We have appellate jurisdiction over Blair's appeal from the district court's final judgment. *Id.* § 1291.

## III. ANALYSIS

### A. Standard of Review

We review de novo a district court's order granting summary judgment, *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004), and will affirm a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," FED. R. CIV. P. 56(c). In reviewing the district court's decision to grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Discriminatory Discharge

Under the ADEA, it is "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Michigan's ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age . . . ." MICH. COMP. LAWS § 37.2202(a).

Blair pursues his age-discrimination claims under two theories—discriminatory discharge and harassment. He pursues his discriminatory discharge claims under both the ADEA and ELCRA, and pursues his harassment claim only under the ELCRA. We address together Blair's discriminatory discharge claims under the ADEA and ELCRA because the same standards and mode of analysis apply to claims arising under both statutes, *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488-90 (6th Cir. 2000); *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 208 n.3 (6th Cir. 1990), and the parties identify no substantive differences in the analysis applicable under the two statutes.

### 1. Framework of Analysis

An age-discrimination plaintiff may support her claim with either direct evidence or indirect (also called circumstantial) evidence. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). We have defined direct evidence as "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). When a plaintiff establishes discrimination through direct evidence, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *DiCarlo*, 358 F.3d at 415 (addressing national-origin-discrimination claim; quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality opinion)); *see also DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001) (per curiam) (when plaintiff offers direct evidence of discrimination, "the case should proceed as an ordinary civil matter" (citation omitted)).

By contrast, when an age-discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-05 (1973). *Rowan*, 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 67-68 (Mich. 1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 2. Direct Evidence

Blair maintains that he has offered direct evidence that his termination was motivated by age discrimination. Although he contends that eight different pieces of evidence are each direct evidence, only three demand our consideration.

#### (a) Tsolis's Statement that Blair Was "Too Old" for the Ford Account

Blair offers as direct evidence of age discrimination Tsolis's April 2001 statement that Blair was "too old" to handle the Ford account. Before considering whether this statement constitutes direct evidence, we must decide whether it is admissible.

Henry Filters argues that this statement is inadmissible hearsay. By definition, only out-of-court statements offered to prove the truth of the matter asserted are hearsay. FED. R. EVID. 801(c). Blair offers Tsolis's April 2001 statement for that fact that it was said, not to prove that Blair was actually too old to work the Ford account. Accordingly, this statement is not hearsay because it is not being offered for the truth of the matter asserted. Having concluded that the statement is admissible, we next consider whether it constitutes direct evidence of age discrimination.

Tsolis's April 2001 statement that Blair was "too old" to handle the Ford account is direct evidence that Tsolis *removed Blair from the Ford account* because of his age. Blair's complaint, however, does not assert this adverse-employment action as a basis for his discrimination claims; instead, he grounds his discriminatory-discharge claims solely upon his *termination*. An inference is required to connect this statement to the decision to terminate Blair (specifically, the inference that Henry Filters fired Blair for the same reason it removed him from the Ford account), so Tsolis's statement is not direct evidence that Henry Filters terminated Blair because of his age.[7] This fact distinguishes Blair's case from *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836 (Mich. 2001), where the employer said that the employee was "getting too old for this shit" during the conversation in which the employee was terminated. *Id.* at 838. Because the employer in *DeBrow* referred directly to the plaintiff's age as a reason *for his discharge*, no inference was necessary to connect that statement to the adverse-employment action.

### (b) Tsolis's Age-Related Slurs

Blair also contends that Tsolis's numerous and frequent age-related slurs qualify as direct evidence of discrimination. Specifically, Blair points to Tsolis's referring to Blair as "the old man on the sales force," and Tsolis's mocking question regarding whether "the old guy can make it up the stairs." Like Tsolis's statement regarding Blair's suitability for the Ford account, these statements are admissible because they are not offered to prove that Blair was old or that he had difficulty ascending stairs. Instead, these statements are offered for the fact that Tsolis made them. Having concluded that these derogatory comments are admissible, we next consider whether they constitute direct evidence of age discrimination.

In *Rowan*, we held that when managers make age-biased statements outside the context of the decision to discharge the plaintiff, the statements are not direct evidence of age discrimination. *Rowan*, 360 F.3d at 550. We explained, "Since the plaintiffs do not allege that they were made in relation to the decision to discharge the plaintiffs as part of the reduction in force, an inference is required that [age] bias may have played a role in the decision to select these plaintiffs." *Id.* This analysis comports with the definition of direct evidence. It is also consistent with our opinions requiring some degree of connection between the comments and the relevant decision if the comments are to be considered even as *circumstantial* evidence of discrimination. *See, e.g.*, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (statements by non-decision makers insufficient to establish pretext as circumstantial evidence); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (same); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) (noting that isolated and ambiguous comments are too abstract to be considered as circumstantial evidence of discrimination in pretext analysis).

We note, however, that there exists some tension in the law of this circuit. In *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir. 1995), we held that racist comments by the plaintiff's managers "constitute[d] direct evidence that plaintiff's termination may have been racially motivated," notwithstanding that the comments were temporally removed from the termination decision and did not address the plaintiff in particular. *Id.* at 1249. Similarly, in *DiCarlo*, a supervisor told an Italian-American employee that there were too many "dirty wops" working at the facility; about two weeks later, the supervisor terminated the employee. *DiCarlo*, 358 F.3d at 412-13. Because the slurs were uttered by an individual with decision-making authority regarding the plaintiff's job, we held that these statements were direct evidence of national-origin discrimination. *Id.* at 416.

---

[7] We note that, because Henry Filters explained that it terminated Blair because he was assigned to the relatively unproductive General Motors account, this inference is small and requires only a tiny leap in logic.

As an initial matter, we observe that this court decided both *Talley* and *DiCarlo* before *Rowan* and that "[r]eported panel opinions are binding on subsequent panels." 6 Cir. R. 206(c); *United States v. Abboud*, 438 F.3d 554, 567 (6th Cir. 2006) (when two cases reach irreconcilable conclusions, the earlier-decided case controls).[8] Further, we see no principled reason for concluding that race-based and national-origin-based slurs are such overpowering evidence of discrimination that no inference is necessary to connect the expressed discriminatory animus to the adverse employment action, but mocking an older employee's age is not. Although *Rowan* did not discuss *Talley* or *DiCarlo*, we remain open to the possibility but do not determine that *Rowan* can be distinguished from these earlier cases.

We need not resolve this conundrum here. As shown below, even if we apply the circumstantial-evidence test, it is clear that Henry Filters was not entitled to summary judgment.[9]

### (c) Tsolis's "Younger Sales Force" Statement

Blair also asserts that Tsolis's statement that Duncum overheard in the summer of 2003 constitutes direct evidence of discrimination. Specifically, Tsolis stated that "he needed to set up a younger sales force." J.A. at 194 (Duncum Dep. at 28:17-18). Again, we consider whether this statement is admissible before considering whether it is direct evidence of age discrimination.

We conclude that this statement is not offered for the truth of the matter asserted, for whether Tsolis actually *needed* a younger sales force is not at issue. Instead, the statement is being offered as evidence that this perceived need fueled Henry Filters's decision to terminate Blair. Even if we

---

[8] We note that *Rowan* addressed age-discrimination claims under the ADEA, while *Talley* and *DiCarlo*, respectively, addressed race- and national-origin-discrimination claims under Title VII. Although this is a basis for distinguishing *Talley* and *DiCarlo* from *Rowan*, it amounts to the quintessential distinction without a difference. Regardless of which statute is being analyzed, the issue (is the proffered evidence direct or circumstantial evidence of discrimination?) and the inquiry (is an inference required to connect the evidence to the adverse employment action?) are the same.

[9] The direct/circumstantial distinction need not affect the further proceedings on remand. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570-77 (6th Cir. 2003) (en banc) (offering analysis under both direct-evidence and circumstantial-evidence standards and ultimately remanding age-discrimination case to the district court for further proceedings). Although a district court *may* find it helpful to instruct a jury on the *McDonnell Douglas* burden-switching framework in an appropriate circumstantial-evidence case, there is no *requirement* that it do so in all cases. *See Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 595-99 (6th Cir. 2003); *Chonich v. Wayne County Cmty. Coll.*, 874 F.2d 359, 366 (6th Cir. 1989) (*McDonnell Douglas* instruction "has been approved but is not absolutely required by this court"). When a discrimination case proceeds to trial, the focus is on the ultimate question of discrimination, rather than the burden-switching framework, regardless of whether a plaintiff seeks to prove his case through direct evidence or circumstantial evidence. We noted as much by holding that when reviewing a jury verdict in a discrimination case, our "focus [is] on the ultimate question of discrimination rather than on whether a plaintiff made out a prima facie case." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 n.7 (6th Cir. 2007) (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005)).

　　A review of our sister Circuits' model jury instructions (we focus on our sister Circuits' because we have yet to publish any model civil instructions) indicates that district courts should instruct juries the same way in direct-evidence ADEA cases as in indirect-evidence cases. *See, e.g.*, *Fifth Circuit Pattern Jury Instructions: Civil* § 11.9.1 (2006); *Eleventh Circuit Pattern Jury Instructions: Civil* § 1.4.1 (2005); *Seventh Circuit Federal Jury Instructions: Civil* § 3.01 (2005); *Fifth Circuit Pattern Jury Instructions: Civil* § 11.2 (2005); *Eighth Circuit Model Jury Instructions: Civil* §§ 5.11, 5.91 (2001); *Ninth Circuit Model Jury Instructions: Civil* §§ 14.1, 14.2, 14.6 (2001). Some Circuits (e.g., the Eighth) distinguish between "pretext" cases and "mixed motive" cases, but identify no difference between direct-evidence and circumstantial-evidence cases. As we have noted, "mixed motive" is not synonymous with "direct evidence," especially in the wake of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711 (6th Cir. 2006) (noting that *Desert Palace* held that mixed-motive cases could be based upon circumstantial evidence). Only the Third Circuit distinguishes between direct- and indirect-evidence cases, noting that its "pretext case" instruction applies only in cases proceeding through circumstantial evidence. *Third Circuit Model Jury Instructions: Civil* § 8.1.2 cmt. (2006). It does not, however, indicate how courts should instruct juries in cases proceeding through direct evidence.

deemed this purpose as "truth of the matter asserted," however, the statement still would not be hearsay. If a statement is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," FED. R. EVID. 801(d)(2)(D), it is properly attributed to the employer under FED. R. EVID. 801(d)(2)(D) and consequently is not hearsay. *See, e.g.*, *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (statements of a deputy police chief regarding promotion eligibility were admissible nonhearsay because deputy chief was "charged with managing the promotional process"); *Carter v. Univ. of Toledo*, 349 F.3d 269, 276 (6th Cir. 2003) (statements of university's vice provost regarding potential racial prejudice within university's College of Education were admissible nonhearsay; because of vice provost's "oversight of the affirmative action process at the University, . . . his statements concerning the racial composition of the workforce [was] within the ambit of his authority."); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1081 (6th Cir. 1999) (supervisor's statement was not hearsay because of his supervisory position); *but see Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (statement of supervisor did not concern a matter within scope of supervisor's employment and therefore was inadmissible hearsay because supervisor "was not involved in the actions that plaintiff claims led to her constructive discharge"). Accordingly, to decide whether Tsolis's "younger sales force" statement is admissible under Rule 801(d)(2)(D), we must determine whether personnel matters were a matter within the scope of Tsolis's employment.

To ascertain the scope of Tsolis's employment, we must make a preliminary determination, under Federal Rule of Evidence 104(a), whether Tsolis had the authority to hire and fire salespeople. In this inquiry, we generally are "not bound by the rules of evidence," FED. R. EVID. 104(a), and accordingly may consider the statement itself, FED. R. EVID. 801(d)(2). Also, we apply the preponderance-of-the-evidence standard for the burden of persuasion in this analysis. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

Substantial evidence indicates that hiring and firing salespeople was within Tsolis's realm of responsibility. For instance, Jackson's former secretary stated that Tsolis "had a high degree of influence" over personnel matters and that in the spring of 2003, he threatened to terminate salespeople. J.A. at 219 (Ciszewski Aff. ¶¶ 5-6). She further stated that although Jackson was dismayed by these threats, he never indicated that Tsolis lacked the authority to terminate salespeople. *Id.* (¶ 5). Roger Brodeur, a former Durr Automation employee, echoed this sentiment. J.A. at 224-25 (Brodeur Aff. ¶ 9). Brodeur also stated that he was personally involved in some discussions with Tsolis and Jackson regarding whether particular salespeople should be terminated. Based upon these discussions, Brodeur stated that "Tsolis was consulted by Mark Jackson and participated in the decisions of who would be fired and who would be hired at Henry Filters and Durr Automation." J.A. at 221 (Brodeur Aff. ¶ 4). Additionally, Tsolis directly told Duncum that he (Tsolis) had made the decision to terminate Roger Brodeur, as well as others.

Henry Filters offers evidence to the contrary in the form of affidavits and deposition testimony from Tsolis, Jackson, and Zinger. But this self-serving evidence does not outweigh the evidence indicating that personnel matters within the sales force were within the scope of Tsolis's employment. Accordingly, we conclude that the preponderance of evidence indicates that Tsolis had the authority to hire and fire salespeople, and therefore, Tsolis's "younger sales force" statement concerned a matter within the scope of his employment.

Having concluded that Tsolis's statement regarding a younger sales force is admissible, we turn to whether it is direct evidence of age discrimination. The statement certainly reflects animus against, and a desire to terminate, older workers. However, neither the statement itself nor the context in which it was uttered directly indicates that Tsolis was speaking of Blair specifically. Instead, Duncum testified in his deposition that he could not recall any mention of Blair's name. Because an inference is needed to connect Tsolis's professed general desire for a younger workforce

with Blair's termination (specifically, that Tsolis intended to fire *Blair* because of this desire), we conclude that this statement is not direct evidence of discrimination.

### 3. Prima Facie Case

#### (a) Standard

Assuming that Blair lacks direct evidence of discrimination, we consider whether he has offered sufficient evidence to create a genuine issue of material fact regarding those elements of the prima facie case that are in dispute. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action "under circumstances which give rise to an inference of unlawful discrimination." *Id.*[10]

Thus, to establish a prima facie case of age discrimination, a plaintiff normally must show that: (1) he or she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment decision; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee. *See Rowan*, 360 F.3d at 547. The Supreme Court and this court have set forth a number of more specific ways by which a plaintiff may satisfy the fourth element. *See, e.g., O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (concluding that a plaintiff alleging age discrimination may satisfy the fourth element by introducing evidence that the plaintiff was replaced by someone "substantially younger"); *McDonnell Douglas*, 411 U.S. at 802 (concluding that a plaintiff turned down for a job may show "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications"); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (concluding that a fired plaintiff may show that "'he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees'" (quoting *DiCarlo*, 358 F.3d at 415)); *Monette*, 90 F.3d at 1185 (concluding that a plaintiff alleging discrimination on the basis of disability may show that "after rejection or termination the position remained open, or the disabled individual was replaced"). We have held that, in cases involving a reduction-in-force, "the fourth prong is modified so that the plaintiffs must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Rowan*, 360 F.3d at 547 (quoting *Ercegovich*, 154 F.3d at 350).

We must keep in mind, however, that these are merely various context-dependent ways by which plaintiffs *may* establish a prima facie case, and not rigid requirements that all plaintiffs with similar claims must meet regardless of context. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in [employment discrimination] cases, and the specification above of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations."). The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253; *DeBrow*, 620 N.W.2d at 838 n.8.

---

[10] In *Burdine*, the Supreme Court stated that a plaintiff must "prove by a preponderance of the evidence" the elements of a prima facie case in order to meet his or her burden. *Burdine*, 450 U.S. at 253. However, the Court was reviewing a bench trial, not a motion for summary judgment, and we have since made clear that a district court's duty in reviewing a motion for summary judgment is to "determine[] if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the prima facie requirements." *Cline*, 206 F.3d at 661; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993) (stating that a question of fact remains for the jury if "reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case") (emphasis removed).

We conclude that Blair has offered evidence sufficient to create a genuine issue of material fact regarding the single disputed element of his prima facie case. The parties do not dispute that Blair was over forty years old, that he was qualified for the job, or that he suffered an adverse employment decision. Instead, the dispute centers on the fourth element—whether Blair has offered "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan*, 360 F.3d at 547.[11]

### (b) Evidence

Each of Tsolis's three statements discussed above, *see supra* Part III.B.2., is sufficient circumstantial evidence to create a genuine issue of material fact that Henry Filters dismissed Blair because of his age.[12] These statements demonstrate that Blair's direct supervisor (1) repeatedly mocked Blair's age, (2) removed Blair from a lucrative account because of his age, and (3) told other employees that he wanted younger salesmen. Henry Filters attacks this evidence by asserting that Tsolis's various statements are not relevant because he was not a decision maker regarding Blair's employment.[13]

---

[11] Blair claims that he satisfies the fourth element by showing that he was replaced by Buzz Benschoter, a younger employee. This argument overlooks that Blair was terminated as part of a reduction-in-force. In such a context, we have noted, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties . . . . A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878 (1990). Nonetheless, Henry Filters's decision to shift Blair's former duties to a younger salesman is not necessarily irrelevant. In appropriate cases, such evidence might constitute a circumstance, among others, giving rise to an inference of age discrimination, even if this evidence is not sufficient to show that the plaintiff was "replaced," as *Barnes* defines that term.

[12] Blair also cites statistical evidence indicating that between 2000 and 2003, the average age of Henry Filters salespeople dropped from around fifty-four years old to around forty-two years old. Additionally, Blair lists eight Henry Filters salespeople within the protected class who were dismissed between 2000 and 2003.

   This evidence is of doubtful relevance. First, it does not contain any form of statistical analysis. Additionally, the "average age" statistics do not separate employees who retired or resigned from those who were terminated. The statistics are also flawed in that the sample size appears to be very small. *See, e.g.*, *Black v. City of Akron*, 831 F.2d 131, 134 (6th Cir. 1987) (small sample sizes are of little value in applying EEOC's four-fifths rule, under which disparate impact is shown when an employer's selection criterion results in employees in a protected class being selected less than 80% as frequently as employees outside the protected class). This is especially problematic because Blair does not offer a complete list of salespeople who were not dismissed or a list of salespeople under age forty who were dismissed. It is impossible to tell whether the drop in the sales force's average age resulted from the retirements of several octogenarians or from a broad-based campaign to clear the ranks of salespeople over age fifty.

   Further, it is not clear that the older employees on Blair's list lost their jobs as part of the reduction-in-force. Five of the eight people whom Blair lists were dismissed in 2000. Although the exact scope of the reduction-in-force is far from clear, the record's earliest allegation of "financial distress" triggering a reduction-in-force at Henry Filters is 2001. *See* J.A. at 75 (Raul Martinez Aff. ¶ 14).

   Because this statistical evidence is so inherently unreliable, we reach our decision on different grounds, as discussed above.

[13] For its part, Henry Filters counters Blair's irrelevant statistics with irrelevant statistical evidence of its own. Henry Filters argues that company-wide, the average age of employees increased between 2000 and 2003. This argument, however, misses the mark. Henry Filters does not indicate whether the population of employees includes all three Durr Ecoclean constituent companies, or only Henry Filters. Either way, it appears that this argument focuses on the wrong population of employees. In *Bender v. Hecht's Department Stores*, 455 F.3d 612 (6th Cir. 2006), we held that "the relevant group" for such comparisons "must include: (1) the Plaintiffs' positions; (2) all of the positions slated for elimination that were reviewed by the same decisionmaker(s); and (3) all equivalent, but only the equivalent, positions of those held by the Plaintiffs." *Id.* at 621. By sweeping employees who were not salespeople into the population represented by its statistics, Henry Filters ignores *Bender*'s admonition.

### (c) Scope of Tsolis's Authority

Henry Filters disputes that Tsolis had any authority regarding personnel decisions. If the company is correct, then Tsolis's statements are legally insufficient to satisfy Blair's prima facie case. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (statements by non-decision makers insufficient to show discriminatory animus); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (same). Consequently, we must determine whether Blair has introduced admissible evidence sufficient to create a genuine issue of material fact regarding Tsolis's authority to participate in the decision to terminate Blair.

Earlier, we concluded that at all times relevant to this case, Tsolis had authority over personnel matters. *See supra* Part III.B.2.c. We conducted this analysis under Rule 104(a) to determine whether one of Tsolis's statements was admissible under Rule 801(d)(2)(D). Because we conducted that analysis under Rule 104(a), we did not take into account the admissibility of the evidence we considered. If all of the evidence we considered is admissible, the evidence supporting our previous determination is, at minimum, sufficient to create a genuine issue of material fact regarding Tsolis's authority over personnel matters. Accordingly, we must consider whether the previously considered evidence is admissible.

In our Rule 104 analysis, we considered affidavits from Jill Ciszewski and Roger Brodeur and deposition testimony from Richard Duncum. Henry Filters does not contest the admissibility of the testimony in the affidavits. We conclude that this testimony is admissible. Henry Filters challenges Duncum's deposition testimony as hearsay. Duncum testified that Tsolis told Duncum that Tsolis had made the decision to terminate Roger Brodeur and other employees. The district court concluded that this statement is hearsay. We disagree.

Although this statement was made out of court and is offered for the truth of the matter asserted, it is admissible. As noted above, statements "by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" are not hearsay. FED. R. EVID. 801(d)(2)(D). By definition, a supervisor's knowing his own job duties is within the scope of his employment. His describing these job duties to others, especially subordinates, necessarily constitutes a statement concerning a matter within the scope of his employment. Insofar as Tsolis's statements define the scope of his job powers, they are admissible non-hearsay.[14]

We conclude that the admissible evidence is sufficient to create a genuine issue of material fact regarding whether Tsolis participated in the decision to terminate Blair. More specifically, the evidence indicates that Tsolis (1) referred to himself as "the Terminator," (2) threatened to fire salespeople, (3) participated in personnel decisions, and (4) stated that he had terminated people himself, and also that (5) Tsolis's superiors never indicated that he lacked the authority to terminate salespeople. This evidence, at minimum, creates a genuine issue of material fact whether Tsolis had authority over personnel matters involving salespeople generally. Additionally, the record contains admissible evidence that Tsolis (1) was Blair's direct supervisor, (2) notified Blair that he would be discharged, and (3) signed Blair's termination letter. This evidence would permit a reasonable fact-finder to conclude that Tsolis was a decision maker regarding (or that he otherwise influenced) *Blair's* termination specifically.

Based on all the above, we conclude that Blair has offered "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge

---

[14] We recognize that the statement in question could be offered for purposes beyond this limited purpose, e.g., for the proposition that Tsolis actually fired Brodeur. We express no opinion whether the statement is admissible for such other purposes and, if not, whether a limiting instruction to a jury would be appropriate.

for impermissible reasons." *Rowan*, 360 F.3d at 547. Accordingly, we conclude that this evidence is sufficient to create a genuine issue of material fact regarding Blair's prima facie case.

### 4. Henry Filters's Legitimate Non-Discriminatory Reason

Henry Filters asserts that business conditions necessitated the reduction-in-force that led to Blair's termination. Further, it maintains that it chose to terminate Blair in particular because the General Motors account was his primary assignment, and "General Motors was, at that time, emphasizing purchasing decisions through auctions and target pricing. As a result, direct sales activities were relatively less important." J.A. at 113 (Jackson Aff. ¶ 13). By offering admissible evidence of this reason, Henry Filters has satisfied its burden of production. *See Burdine*, 450 U.S. at 254-55.

### 5. Pretext

Blair contests Henry Filters's reason for terminating him, claiming that the reduction-in-force was pretextual. Generally, to show pretext, a plaintiff must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Blair proceeds by the second method.

To evaluate whether a plaintiff has created a genuine issue of material fact that the defendant's proffered non-discriminatory reason did not actually motivate the defendant's challenged conduct, we examine the evidence the plaintiff produces to establish a prima facie case, evidence discrediting the defendant's proffered reason, as well as any additional evidence the plaintiff chooses to put forth.

In *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), the Supreme Court held that an employee was not entitled to judgment as a matter of law, reasoning: "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519. *St. Mary's Honor Center*, however, also held that "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination" but does not compel a finding of discrimination. *Id.* at 511. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), clarified that the factfinder's belief in the intentional-discrimination explanation can be based on the evidence supporting the prima facie case as well as evidence discrediting the employer's proffered rationale; the plaintiff need not produce any additional evidence. *Id.* at 146-49. Under the logic of *St. Mary's Honor Center* and *Reeves*, to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale. "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cty. Sch. Bd.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing *Burdine*, 450 U.S. at 253).

The Supreme Court's decision in *Reeves* rejected our requirement in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), that "the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of . . . discrimination" to prove pretext. The Supreme Court held that the Fifth Circuit erred when it assumed that a plaintiff, after discrediting the employer's proffered nondiscriminatory rationale, must always introduce additional evidence of discrimination beyond that supporting his prima facie case. *Reeves*, 530 U.S. at 149. We have clarified that, after *Reeves*, the *Manzer* "additional evidence" requirement is limited to the production of evidence rebutting the defendant's proffered legitimate,

nondiscriminatory reason for taking the challenged action. *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002) (finding that the evidence supporting the plaintiff's prima facie case—his qualifications, positive performance reviews, and continued grant of bonuses—"could allow a fact finder to find that [the defendant's] proffered reason . . . was insufficient to motivate the discharge decision"); *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 602 (6th Cir. 2001) (holding that the district court erred when it denied the defendant's motion for judgment as a matter of law, because the plaintiff had neither established a prima facie case of gender discrimination nor produced evidence rebutting the defendant's proffered rationale for her discharge). We thus hold that Blair did not need to produce additional evidence to support a finding of pretext; the evidence that he produced in support of his prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext and thus to survive summary judgment.[15]

As discussed previously with respect to the fourth prong of the prima facie case, Blair has offered sufficient circumstantial evidence to create a genuine issue of material fact that Henry Filter singled out Blair for discharge on the basis of his age. Moreover, Henry Filters's lack of an objective plan for the reduction-in-force creates a genuine issue of material fact regarding whether this explanation is credible. We have previously indicated that "a lack of evidence regarding a company's objective plan to carry out a reduction in force" is a "factor[] that might indicate that an alleged reduction in force is pretextual." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 374 (6th Cir. 1999) (citing *Hillebrand v. M-Tron Indus. Inc.*, 827 F.2d 363, 367-68 (8th Cir. 1987)). Here, the record indicates that a substantial number of Henry Filters employees (and employees of other companies in the Durr Ecoclean family) lost their jobs, but reveals no blueprint for this reduction. Instead, the shedding of employees appears to have been chaotic, occurring in fits and starts. Further, the record does not clearly indicate even when Henry Filters's plan for workforce reduction began. This lack of an objective plan, coupled with Blair's circumstantial evidence of age discrimination, would permit a reasonable fact-finder to conclude that Henry Filters's proffered non-discriminatory reason for terminating Blair was a pretext for discrimination.

## C. Hostile Work Environment

Blair presses his harassment, or hostile-work-environment, theory only under Michigan's ELCRA. To establish a discrimination claim based upon this theory, he must show (1) membership in a protected age group (i.e., that he is at least forty years old); (2) that he was subjected to unwelcome communication or conduct on the basis of his age; (3) that this conduct or communication was intended to, or in fact did, interfere substantially with his job, (or that it created an offensive or hostile work environment); and (4) respondeat superior. *Downey v. Charlevoix County Bd. of County Rd. Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998).

Blair provides neither any evidence that Tsolis intended his age-based communications to interfere with Blair's ability to perform his job, nor any evidence that these communications did, in fact, interfere substantially with his job. Therefore, no reasonable jury could conclude that he established a cause of action for harassment under the ELCRA, and we affirm the district court's grant of summary judgment on Blair's hostile-work-environment claim.

---

[15] We recognize that this holding comes close to permitting a plaintiff in a reduction-in-force case to get to a jury merely by creating a genuine issue of material fact regarding the prima facie case. But to create a genuine issue of material fact regarding the employer's actual motivation, a plaintiff must still provide evidence from which a reasonable jury could conclude that an illegal motivation was *more likely* the reason for the adverse employment action. To create a genuine issue of material fact regarding the prima facie case in a case involving a reduction-in-force, a plaintiff's standard is lower. The plaintiff must supply evidence *tending to indicate* that the employer singled the plaintiff out for impermissible reasons. Accordingly, creating a genuine issue of material fact regarding the prima facie case is not a free pass to a jury, even in a reduction-in-force case.

## IV.  CONCLUSION

For the foregoing reasons, we are convinced that Blair has proffered evidence sufficient to create a genuine issue of material fact regarding his age-discrimination claims under the ADEA and the ELCRA.  Accordingly, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.