NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0449n.06

No. 11-1022

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 30, 2012*

LEONARD GREEN, Clerk

DAVID PIKE, )
)
    Plaintiff-Appellant, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
ABF FREIGHT SYSTEMS, INC., )  EASTERN DISTRICT OF MICHIGAN
)
    Defendant-Appellee. )

Before: MARTIN, SUTTON and KETHLEDGE, Circuit Judges.

SUTTON, Circuit Judge.  David Pike sued his former employer, ABF Freight Systems, after ABF demoted him from his position as manager of its Flint, Michigan trucking terminal. Concluding that Pike could not show ABF acted (impermissibly) because of his age, rather than (permissibly) because he performed poorly in the sales component of his job, the district court granted ABF's motion for summary judgment.  We affirm.

I.

Pike began working for ABF Freight Systems in 1995.  The company promoted him to branch manager of its freight terminal in Flint, Michigan in 1999.  In 2008, after several years of performance reviews in which Pike's supervisors told him that he needed to increase revenue at the Flint terminal (one of his responsibilities as branch manager) and that his performance in that regard

was "unacceptable," ABF demoted Pike to the role of operations supervisor, cutting his salary by nine percent and taking away his car allowance. R. 8-2 at 48. Pike was 56 years old. R. 8-2 at 3.

Jeffrey Slobodnik, Vice President of Operations for the region in which the Flint terminal was located and one of Pike's immediate supervisors, traveled to Flint to deliver the news. After Slobodnik told him he was being demoted, Pike asked Slobodnik to submit his name for a branch manager position in Cleveland. Slobodnik had no authority over that position, but agreed to e-mail the regional vice president who did letting him know of Slobodnik's availability. (In fact, Slobodnik went further, agreeing to e-mail all of the regional vice presidents to let them know Pike was interested in a transfer.) Pike claims that Slobodnik then said, "You know, just being realistic, who do you think they're going to choose, a young superstar out of Cincinnati or old Dave from a failing terminal in Flint?" R. 8-2 at 39. Pike responded that "[t]hat's not fair. So you're telling me that my career is ending because of my age and my location and I won't have an opportunity to go anywhere even though the jobs are open?" *Id.* "That's pretty much what it is," replied Slobodnik. *Id.*

Several months later, Pike took medical leave to deal with depression that he attributes to the demotion. ABF paid his full salary for the next six months. When Pike did not return to work after that, the company discharged him. Three months later, he sued ABF in Michigan state court, alleging that the demotion (but not the discharge) violated the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq. ABF removed the case to federal district court and moved for summary judgment. The district court granted ABF's motion, concluding that ABF based the demotion on permissible reasons and that Pike failed to demonstrate the reasons were pretextual.

II.

Pike, like any plaintiff alleging age discrimination under Michigan law, has two potential routes to the jury. The first route requires him to show direct evidence of discrimination. *See Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003). Direct evidence "proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Evidence is not direct if it requires even a "tiny leap in logic" to conclude that discrimination was at play in the questioned employment decision. *Id.* at 525 n.7. That is a difficult pitfall to avoid. In *Blair*, even a supervisor's statement that he removed the plaintiff from a major client account because the plaintiff was "too old" was not direct evidence of discrimination in the decision to fire the plaintiff—notwithstanding the reality that his removal from that account, in turn, was part of the employer's reason for firing him. 505 F.3d at 524–25.

Pike likewise lacks direct evidence that ABF demoted him because of his age. Slobodnik's statement about "old Dave" concerned Pike's prospects for a transfer; only by inference could one conclude that the same sentiment affected the demotion decision. *See id.* The same goes for Slobodnik's response to Pike's complaint that his "career [was] ending because of [his] age and [his] location and [he] won't have an opportunity to go anywhere even though the jobs are open." R. 8-2 at 39. Slobodnik's response—"[t]hat's pretty much what it is"—requires at least three inferences to find that Pike's age caused the demotion. It requires (1) the inference that a demotion (which he challenges) equates to a career-ending discharge (which he does not challenge); (2) the inference that

- 3 -

the comment showed age was relevant to the decision as opposed to location; and (3) the inference that the comments related to the demotion rather than the difficulty of getting a transfer. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002). These three inferences are three too many, which suffices to preclude the direct-evidence route. *See Blair*, 505 F.3d at 525 n.7.

That leaves the circumstantial-evidence route. Under the familiar *McDonnell Douglas* framework, which the Michigan courts follow in construing the Elliott-Larsen Act, Pike must first show a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Lytle v. Malady*, 579 N.W.2d 906, 914–15 (Mich. 1998). Once he does so, the burden shifts to ABF to set forth evidence that it based its employment decision on a "legitimate, nondiscriminatory reason." *Lytle*, 579 N.W.2d at 915 (internal quotation marks omitted). At that point, to survive summary judgment, Pike must introduce evidence that would allow a reasonable jury to conclude ABF's nondiscriminatory explanation was not the "true reason[ for the demotion], but w[as] a mere pretext for discrimination." *Id.*

We need not decide whether Pike made out his prima facie case because, even if he has, he has not discredited ABF's legitimate reasons for demoting him. *See Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008). On Pike's 2006 performance evaluation, his supervisors indicated that his performance was "unacceptable" in three sales-related areas. R. 8-5 at 2. Pike's 2007 evaluation showed modest improvement, but his 2008 evaluation was his worst ever, with seven sales-related "Unacceptable Performance" indications, ten "Needs Improvement" indications and just twelve "Meets or Exceeds Expectations" indications. R. 8-22 at 2.

Meanwhile, the Flint terminal was losing money and reducing staff. With pay up 2.5 percent and revenue down 7.9 percent, Pike fired the remaining office clerk in July 2007. Still, the terminal lost $56,500 in the fourth quarter of 2007 and nearly $126,000 for the year as a whole. By June 2008, the terminal was losing almost nine cents on every dollar. In November 2008, Slobodnik's supervisor e-mailed him and twelve other managers to tell them that continued declines in revenue made mandatory staff reductions necessary. By that point there were no office workers left at the Flint terminal; all that remained were two truck drivers and three supervisors—Pike and two others, one of whom was already being reassigned to the Nashville terminal. Pike's supervisors decided to demote him, citing economic necessity and his inability to complete the sales portion of his responsibilities. Both of these qualify as legitimate, nondiscriminatory reasons to demote an employee. *See Lytle*, 579 N.W.2d at 917–18; *Weigel*, 302 F.3d at 377–78.

Pike may establish that these explanations are pretextual by showing that (1) they have no basis in fact, (2) they are insufficient to warrant the demotion or (3) they did not actually motivate ABF's decision. *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). He fails on all three counts. First, he acknowledges the Flint terminal's declining revenues and the "unacceptable" marks on the sales portion of his evaluations, which suffice to give ABF's explanations a basis in fact. R. 8-2 at 32–34. Second, he does not seriously contend that the response was overblown. At a time when economic necessity forced ABF to reduce its labor costs, Pike was meeting expectations in fewer than half of the sales-related responsibilities of his job—the very responsibilities taken away from him by his demotion to operations supervisor. He

acknowledges that ABF needed to demote or fire *someone* in order to address the basic problem of revenue exceeding costs, R. 8-2 at 41, and he understood that failing to meet his supervisors' sales-related expectations could be grounds for demotion (or worse), *see* R. 8-3 at 12; R. 8-4 at 9; R. 8-2 at 32–33. He just thought ABF would let one of his subordinates go first. R. 8-2 at 41.

Pike is left to argue that, although ABF had real and sufficient legitimate grounds to demote him, those grounds did not motivate its decision. The argument falls short. Slobodnik stated that ABF demoted Pike because of his "inability to perform all the duties of the job," pointing to Pike's sales-side failings. R. 8-3 at 7. Jerome Bergman, the regional vice president of sales and Pike's other supervisor, testified that he supported Slobodnik's decision to demote Pike and that he had tried fire or demote Pike on "numerous occasions" since 2000 due to Pike's lack of effort at the sales components of his job. R. 8-4 at 11–12. Both decisionmakers thus identified economic necessity and Pike's sales shortcomings as the reasons for the demotion.

Claiming an inconsistency in these explanations, Pike points to Bergman's statements that Pike was demoted because of "cutbacks" and that Slobodnik had been the one to initiate the demotion. R. 8-4 at 11. These explanations conflict, he says, with Slobodnik's statement that it was Pike's shortcomings on the sales side that led to the demotion. But even reading the record in the light most favorable to Pike, no inconsistency exists. Bergman, responsible for sales, had long wanted to fire Pike; Slobodnik, more concerned with the operational aspects of Pike's job (at which all agree Pike was more proficient), had resisted, but when mandatory cuts became necessary he

agreed to demote Pike to a job that suited his skills. If anything, this testimony suggests a prolonged effort by Slobodnik to save Pike's job, not a cover-up for an age-related firing.

In the end, Pike's claim that his demotion was based on age rests on nothing but Slobodnik's single, ambiguous prediction about whether other vice presidents would be likely to select him for a transfer. In light of the overwhelming, uncontroverted evidence that ABF demoted him because of economic conditions and poor job performance, that is not enough to demonstrate pretext and survive summary judgment. *Cf. Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471 (6th Cir. 2005).

## III.

For these reasons, we affirm.