NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0341n.06

No. 13-5237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GEORGIE BREWER, et al.,

      Plaintiffs-Appellants,

v.

NEW ERA, INC.,

      Defendant-Appellee.

FILED
Apr 29, 2014
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE:    CLAY and ROGERS, Circuit Judges; LUDINGTON, District Judge.[*]

    **CLAY, Circuit Judge**. Plaintiffs Georgie Brewer, 77 years old, and Barbara Greene, 70 years old, are sisters of African-American descent, who are appealing the district court's order granting Defendant, New Era, Inc., summary judgment on one claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. and one claim of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. The sisters allege that New Era discriminated against them on the basis of their race and age when it laid them off from their jobs during an economic workforce reduction at the defendant company in 2008. The district court found no direct evidence of discrimination and held that the circumstantial evidence was insufficient as a matter of law to establish that age or race, rather than economic necessity, was the reason the sisters were laid off. For the reasons

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

that follow, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.

## BACKGROUND

### A.     Procedural History

On September 9, 2010, Plaintiffs Georgie Brewer and Barbara Greene ("Plaintiffs") filed a complaint in the United States District Court for the Middle District of Tennessee alleging that New Era, Inc. ("Defendant" or "New Era") discriminated against them on the basis of their age and race when it laid them off during an economic workforce reduction during the 2008 recession.  On August 31, 2012, after the close of discovery, Defendant moved for summary judgment arguing that, as a matter of law, Plaintiffs could not show that they were targeted for layoff because of their race or age.

The district court found no direct evidence of discrimination and held that the circumstantial evidence was insufficient as a matter of law to establish that age or race discrimination, rather than economic necessity, was the reason for the layoff.  The district court entered the judgment accordingly, and dismissed Plaintiffs' claims on January 23, 2013.

### B.     Factual Background

The relevant facts were accurately summarized by the district court as follows: Plaintiffs are sisters of African-American descent who were longtime employees of New Era, a private company that manufactures stainless steel cookware in Clarksville, Tennessee.  They were originally hired by its predecessor company, Volrath, on the same day in August of 1983. Workers at Volrath were unionized, and some employment decisions were allegedly made according to the company's seniority system.  However, when Donald Henn ("Henn") bought the company in 1983 and changed its name to New Era, the union was decertified.  New Era then

2

became an at-will employer, and it has remained so in the years since, informing employees of its at-will employment practices in an employee handbook.

After purchasing the company, Henn moved to Clarksville to run the plant. In 1999, he moved away, turning over the day-to-day operation of the plant to Terry Siebert, and, eventually, to John Martelli ("Martelli"), a longtime company employee. As plant manager, Martelli was responsible for manufacturing and for hiring and firing employees. Henn, who described himself as a "hands-off manager," trusted Martelli and considered him a friend.

Throughout their tenure working at New Era, Plaintiffs worked almost exclusively on the "packing line," where they assembled items for cook sets so they could be boxed and, ultimately, shipped. Their experience was largely limited to that task: they did not operate the presses that form pots and pans or the machine used to wash them. And neither had significant experience operating the machine that trims excess material from pots and pans after they leave the presses.

In 1994, Plaintiffs both filed charges of discrimination with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that they were being paid the same wage as white employees who had far less experience and responsibility than they had, and that the disparity was a result of race discrimination. New Era responded that seniority had no bearing on wages—that every employee who did the same job received the same wage—and that "seniority is only a factor in job posting and layoff situations." Plaintiffs continued to work at New Era after their EEOC charge was resolved.

In 2008, faced with declining sales revenues amid the U.S. economic collapse, New Era concluded that it needed to reduce operating expenses, including payroll. It decided to reduce its 25-employee workforce by evaluating each employee using a "three-pronged standard" with a

3

goal of retaining those (1) who had been "cross trained" in multiple departments on multiple jobs; (2) who demonstrated consistently that they worked well with others; and (3) who consistently ran a "good production". At the time the workforce reduction was being considered, Defendant employed six African-Americans and five individuals with Korean ancestry.

Martelli met with supervisors Jeff Price ("Price"), whose mother was Korean and whose father was Caucasian, and James Northington ("Northington"), who is an African-American, to determine which employees would be retained and which would be laid off according to the above criteria. Eight employees were identified for layoff; of the eight identified, three were Caucasian, three were African-American, one was Korean-American, and one was Hispanic. Two were under the age of 40. After selecting the eight employees, Martelli contacted New Era's corporate officers, Henn and his son Jeffrey Henn, to explain his rationale for choosing each employee for layoff. He then informed the affected employees, which included Plaintiffs, that they would be laid off on November 14, 2008. After the eight were laid off, one employee, Micha Taylor, who is Korean-American, was called back to work in January 2009.

Two or three months before the layoffs were announced, according to Northington, Jeffrey Henn stated in a meeting that Plaintiffs were too old to still be working and needed to retire. Furthermore, Northington testified that Price, himself Korean-American, made a large number of racially offensive statements about African-Americans in the years before Plaintiffs were laid off. Northington complained about this treatment to Martelli, who made it clear that he would not tolerate complaints about Price and, according to Northington, actually fired two other employees who complained about Price's threats and use of racial slurs. Northington testified that he lodged complaints about Price to Don Henn and, repeatedly, to Jeffrey Henn, but nothing was done about the situation.

4

**DISCUSSION**

This Court reviews a district court's grant of summary judgment *de novo*. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to Plaintiffs' claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering Defendant's motion for summary judgment, this Court accepts Plaintiffs' evidence as true and draws all reasonable inferences in their favor. *Id.* If, as the nonmoving party, however, Plaintiffs fail to make a sufficient showing on an essential element of the case with respect to which they have the burden, Defendant is entitled to summary judgment as a matter of law. *Id.* at 322–23.

Plaintiffs assert that they were discriminated against on the basis of their age in violation of Title VII and the ADEA and on the basis of their race in violation of Title VII. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA states that it is "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

**I.     Age Discrimination Claims**

Plaintiffs first claim that Defendant discriminated against them because of their age in violation of Title VII and the ADEA. Under both statutes, Plaintiffs bear the ultimate burden of persuading the fact-finder that Defendant discriminated against them. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Plaintiffs may carry the burden for summary judgment by introducing either direct evidence that shows Defendant was motivated by discriminatory intent in treating Plaintiffs adversely, or by introducing indirect evidence that supports an inference of discrimination. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566–67 (6th Cir. 2001).

**a.     Direct Evidence**

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)) (citations omitted). Direct evidence does not require the fact-finder to make "any inferences or presumptions." *Id.* In this instance, that would mean evidence that, if believed, requires a finding that Plaintiffs were laid off by Defendant at least in part because of their race or age. *See Bartlik v. U.S. Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996).

We have defined direct evidence as "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). When a plaintiff establishes a claim of discrimination through direct evidence, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *DiCarlo v. Potter*, 358 F.3d 408, 415

6

(6th Cir. 2004) (addressing national-origin-discrimination claim; quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45 (1989)).

In this case, Plaintiffs assert there is direct evidence that they were discharged because of their age. They allege that two months before the layoff decisions, Jeffrey Henn said that they were "too old" and "needed to retire" in a meeting with plant manager, Martelli and supervisor, Price. (Pls.' Br. at 7.) "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (internal citation and quotation marks omitted). When looked at in the light most favorable to Plaintiffs, Henn's statements—made just a few months before Plaintiffs were laid off—arguably constitute direct evidence that their age was a factor in their terminations.

In *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007), the plaintiff offered evidence that his direct supervisor made statements that he was "too old" to handle a certain account. We found that the statement that the plaintiff was "too old" to handle an account was direct evidence as to why plaintiff was removed from the account. However, we found that since the plaintiff's cause of action was for termination, the statement that he was "too old" to handle an account constituted indirect evidence. But, in *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir. 1995), we held that racist comments by the plaintiff's managers "constitute[d] direct evidence that plaintiff's termination may have been racially motivated," notwithstanding that the comments were temporally removed from the termination decision and did not address the plaintiff in particular. *Id.* at 1249. Similarly, in *DiCarlo*, a supervisor told an Italian-American

employee that there were too many "dirty wops" working at the facility; about two weeks later, the supervisor terminated the employee. *DiCarlo*, 358 F.3d at 412–13. Because the slurs were uttered by an individual with decision-making authority regarding the plaintiff's job, we held that those statements were direct evidence of national-origin discrimination. *Id.* at 416.

In this case, the statements that Plaintiffs were "too old" and "needed to retire" were made specifically about Plaintiffs by Jeff Henn, the son of the owner of the company. Jeff Henn, was not closely involved in the selection of employees to lay off even though he authorized the layoffs during the reduction in force. The statements, however, were made just two months before the company terminated Plaintiffs' employment as part of a reduction in force. Unlike Blair where the employer made a comment about the employee being "too old" to handle a certain account, in this case, the employer made a comment about the employees being "too old" to continue working entirely and that they "needed to retire." As a result, when looked at in the light most favorable to Plaintiffs, Henn's statements that they were "too old" and "needed to retire" could constitute direct evidence that Plaintiffs' ages were a factor in the decision to terminate their employment. Accordingly, because Plaintiffs have produced evidence that could arguably constitute direct evidence of age discrimination by Defendant, summary judgment on their age discrimination claims was improper.

**b.     Indirect Evidence**

In contrast to direct evidence, when a plaintiff bases her case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that Defendant discriminated against Plaintiffs), we apply the burden-shifting framework set forth in *McDonnell Douglas*. 411 U.S. 792, 802–05 (1973). The Plaintiffs contend that Jeffrey Henn's statements—that they were "too

old" and "needed to retire"—are sufficient circumstantial evidence to create a genuine issue of material fact as to whether New Era dismissed them because of their age.

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, Plaintiffs must first submit evidence from which a reasonable jury could conclude that they established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim).

To demonstrate a prima facie case for discrimination, Plaintiffs must show that (1) they were members of a protected class, (2) they were subjected to an adverse employment action, (3) they were qualified, and (4) they were replaced by someone outside of the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). Because Plaintiffs' termination purportedly arose as part of a workforce reduction, "this [C]ourt has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *see also Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 785–86 (6th Cir. 2007).

Under this framework, if Plaintiffs establish a prima facie case of discrimination then the burden of production shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason for its actions. If Defendant carries this burden, Plaintiffs must then prove by a preponderance of the evidence that the reasons offered by Defendant were a pretext for discrimination." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2007). Pretext may

9

be shown if "the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Plaintiffs carry the burden of persuasion during each stage of the analysis. *Arendale*, 519 F.3d at 603.

The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiffs advance two pieces of circumstantial evidence to support their claim that Defendant's proffered reason for terminating them was pretextual: First, they cite to the comments made by Jeff Henn, and, second, they cite Defendant's failure to follow its "seniority policy" when making termination decisions.

The statements Plaintiffs advance were made specifically about them by Jeff Henn, an officer of the company who authorized the layoff decisions. They were made in the context of Plaintiffs' ability to continue working only two months before the reduction in force. Based on all the above, we conclude that Plaintiffs have offered "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff[s] for discharge for impermissible reasons." *Rowan*, 360 F.3d at 547. When looked at in the light most favorable to Plaintiffs, Henn's statements create a genuine issue of material fact.

Plaintiffs also cite Defendant's failure to follow its "seniority policy" when it comes to layoffs as evidence that their termination was not motivated by the workforce reduction, a fact which if proven true would permit a fact-finder to conclude that Plaintiffs' terminations were motivated by their age. To support their assertion that layoffs at New Era should have been

10

governed by a seniority policy, Plaintiffs refer to an orientation checklist signed by each Plaintiff in 1985 indicating that they were oriented on "seniority - - job posting" among other things; a handwritten response to a 1994 EEOC charge stating that "Seniority is only a factor in job posting and layoff situations"; and an excerpt from the medical leave section of the 2006 New Era Employee Handbook stating that "For purposes of promotion, job assignment, and seniority-related benefits, Medical/Parental Leave shall have no effect."

On balance, Henn's remarks and Defendant's failure to follow its "seniority policy" were sufficient to permit a reasonable fact-finder to conclude that Plaintiffs' terminations were not actually motivated by a reduction in force, but rather were a pretext for discrimination. Looking at this evidence in the light most favorable to Plaintiffs, a genuine issue of material fact exists as to whether a seniority policy existed when it came to layoffs, thus tending to show that Defendant's proffered reason for terminating Plaintiffs was a pretext for discrimination. Accordingly, Plaintiffs have proffered sufficient circumstantial evidence of age discrimination to survive summary judgment.

## II.    Race Discrimination Claims

### a.    Indirect Evidence

As with an age discrimination claim under Title VII, Plaintiffs may survive a motion for summary judgment by producing either direct or circumstantial evidence of race discrimination. With regard to Plaintiffs' claim that they were racially discriminated against, Plaintiffs do not contend that there is direct evidence of race discrimination; instead, they present an argument for indirect evidence of discrimination based on disparate treatment and disparate impact. Since Plaintiffs offer only indirect evidence in support of their discrimination claim, we must apply the burden-shifting analysis set forth in *McDonnell Douglas*, 411 U.S. 792 (1973).

11

Although the issue is close regarding Plaintiffs' disparate treatment argument, Plaintiffs have offered evidence sufficient to create a genuine issue of material fact regarding the single disputed element in this case—pretext. The parties do not dispute that Plaintiffs were African-American, that they were qualified for their job, or that they suffered an adverse employment decision. The sole issue is whether Plaintiffs have met their burden of production as to pretext. *See Reeves*, 530 U.S. at 148; *Blair*, 505 F.3d at 532.

In *Reeves*, the Supreme Court addressed how a plaintiff may carry his burden of production as to pretext. The Court explained that "because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability," a court "err[s] in proceeding from the premise that [the] plaintiff must always introduce additional, independent evidence of discrimination." *Id.* at 149. Rather, whether judgment is appropriate remains a heavily-context driven inquiry that "depends on a number of factors . . . [including] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49.

In *Blair*, we extended the rationale of *Reeves* to the summary judgment stage and concluded that "to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." 505 F.3d at 532. Accordingly, we held that a plaintiff "d[oes] not need to produce additional evidence to support a finding of pretext; the evidence that [she] produced in support of [her] prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext." *Id.*

12

A plaintiff can demonstrate pretext by one of the following three showings: "that the employer's stated reason for the adverse employment action (1) ha[d] no basis in fact; or (2) was not the actual reason; or (3) was insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). In the instant case, Plaintiffs proceed primarily down the second of these paths. While the second path requires that the plaintiff "admit[ ] the factual basis underlying the employer's proffered explanation and further admit[ ] that such conduct could motivate dismissal," *Manzer*, 29 F.3d at 1084, the plaintiff must nonetheless show that this proffered reason was not the actual reason for the adverse employment action.

Plaintiffs have not disputed that Defendant was experiencing a company-wide reduction in force at the time of their termination. However, they question whether the reduction was the real basis for their dismissal, given that Defendant never produced a satisfactory explanation for why Plaintiffs were selected for termination instead of their two Korean co-workers. In contesting Defendant's explanation—that Plaintiffs were terminated because they did not work well with others—Plaintiffs raise several challenges that create at least a material issue of fact about whether "an illegal motivation was more likely than [the reason] offered by [Defendant]." *Id.*

Plaintiffs allege that they were both qualified to work in the Packing Department of New Era as they have done so for thirty plus years without complaint. In addition, Plaintiffs cite sworn testimony from James Northington, an African-American who used to work for New Era, demonstrating that Supervisor Price—who is half Korean and half Caucasian—displayed animosity toward African-Americans and favored Koreans. Specifically, Northington indicated that Price used racial slurs on numerous occasions, denigrated President Obama because of his

13

race, and was generally hostile toward African-Americans. Further, according to Northington, Price always treated Korean employees more favorably than African-American employees.

Plaintiffs also allege that Martelli always sided with Price and ignored any complaints about his racial animosity toward African-Americans. Given that Martelli went to Price for recommendations on who to terminate, this testimony was, on balance, enough to at least create a factual dispute as to whether Plaintiffs' race was a factor in their termination.

Defendant argues that its decisions were not pretext for discrimination because the decision-making process employed a "three-pronged standard" with a goal of retaining employees who had been (1) "cross trained" in multiple departments on multiple jobs; (2) employees who demonstrated consistently that they worked well with others; and (3) employees who consistently ran a good production. The district court held that Plaintiffs' testimony supports the conclusion that they did not "demonstrate consistently that they could work well with others."

But this Court has repeatedly emphasized that decisions made on the basis of subjective criteria, such as whether an employee is a team player or whether she would fit into a new corporate culture, can "provide a ready mechanism for discrimination," and thus should be "carefully scrutinized." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982); *see also Hedrick v. Western Reserve Care System*, 355 F.3d 444, 461 (6th Cir. 2004). Although being a "team player" or "working well with others" may have been an important consideration for Defendant in reducing its workforce, it should not be treated as an absolute defense to what may amount to unlawful discrimination. *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 504–505 (6th Cir. 2011) (citing *Wexler*, 317 F.3d at 576).

14

Plaintiffs have advanced sufficient evidence to create a material issue of fact concerning whether their race was the reason they were terminated from their jobs rather than the reasons offered by Defendant. The accounts suggesting that Plaintiffs were qualified for their positions, as well as the racial animus expressed by the supervisor who influenced the employment decisions (Price), suggest the need for submitting this case to a jury. Thus, we reverse the district court's judgment that Plaintiffs failed to state a genuine issue of material fact as to whether they were terminated as a result of racial discrimination and remand this case for further proceedings.

**CONCLUSION**

For the foregoing reasons, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.