# STATE OF MICHIGAN

# COURT OF APPEALS

DARBY J. O'DELL,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
STATE POLICE, F/LT KEVIN SWEENEY, F/LT
JOHN CARD, F/LT MITCH KRUGIELKI, F/LT
TONY CUEVAS, F/LT MATT BOLGER, F/LT
ANN MCCAFFERY, F/LT PHILLIP MENNA,
F/LT MICHAEL SHAW, F/LT GARY
PARSONS,

        Defendants-Appellees.

UNPUBLISHED
February 1, 2018

No. 334146
Wayne Circuit Court
LC No. 14-012273-CD

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Plaintiff Darby J. O'Dell appeals as of right the trial court's order denying her motion for partial summary disposition and granting the motion for summary disposition filed by defendants State of Michigan, Department of State Police (MSP), and the individual defendants[1] in this action alleging gender discrimination and retaliation pursuant to the Civil Rights Act, MCL 37.2201 *et seq*. We affirm.

On appeal, plaintiff argues that the trial court erred in denying her motion for summary disposition and in granting defendants' motion for summary disposition where genuine issues of material fact existed with regard to whether defendants' stated reasons for not promoting her multiple times were pretextual for unlawful discrimination. We disagree.

---

[1] According to plaintiff in her motion for partial summary disposition in the lower court, the individual defendants were either hiring managers or supervisors that discriminated against her on the basis of her gender. Throughout this opinion, the state and individual defendants will be referred to collectively as "defendants."

The trial court's decision regarding a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996). [*Maiden*, 461 Mich at 120.]

MCL 37.2202(1) provides, in pertinent part, as follows:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

A plaintiff may present either direct or indirect and circumstantial evidence of discrimination. *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016). Direct evidence is that evidence, which if believed by the trier of fact, would lead to the conclusion that unlawful discrimination was a motivating factor in the challenged adverse employment action. *Id*. However, in cases where the record evidence does not yield direct evidence of discrimination, to withstand summary disposition, the plaintiff must adhere to the steps set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to establish a prima facie case. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). By doing so, a plaintiff can "present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Id*., quoting *Debrow v Century 21 Great Lakes, Inc* (*After Remand*), 463 Mich 534, 537-539; 620 NW2d 836 (2001). Where the parties do not dispute that plaintiff has not brought forward direct evidence of gender discrimination, in this case she must rely on "the *McDonnell Douglas* framework." *Hazle*, 464 Mich at 463.

> Under *McDonnell Douglas*, a plaintiff must first offer a "prima facie case" of discrimination. Here, plaintiff was required to present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Lytle* [*v Malady* (*On Rehearing*), 458 Mich 153, 172-173; 579 NW2d 906 (1998); see also *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 254, n 6; 101 S Ct 1089; 67 L Ed 2d 207 (1981); *McDonnell Douglas*, *supra* at 802. [*Hazle*, 464 Mich at 463 (footnote omitted).]

In the trial court, defendants conceded that plaintiff had alleged a prima facie case of gender discrimination with respect to all of the sergeant vacancies at issue where she did not receive a promotion, except for the Bay City and Caro positions, where plaintiff had not produced the appropriate documentation in support of her application. The trial court analyzed plaintiff's claims on the basis of that concession with respect to all of the sergeant vacancies at issue, and did not independently determine whether plaintiff had made out a prima facie claim of gender discrimination. In doing so, the trial court cited the Michigan Supreme Court's decision in *Town v Mich Bell Telephone Co*, 455 Mich 688, 699; 568 NW2d 64 (1997), where the Michigan Supreme Court in that case "elect[ed] to presume that [the] plaintiff has established a prima facie case [of age discrimination]." Specifically, the *Town* Court stated, in pertinent part, as follows:

> The purpose of the prima facie case is to force the defendant to provide a nondiscriminatory explanation for the adverse employment action. That purpose having been served, we move to the plaintiff's evidence that the defendants' proffered nondiscriminatory reason is a pretext for discrimination. [*Id.*]

Notably and for reasons unclear, on appeal defendants have not made the same concession with respect to plaintiff establishing a prima facie case of gender discrimination. However, a thorough review of defendants' brief on appeal confirms that defendants' arguments concerning plaintiff's gender discrimination claim focus on whether she has produced evidence creating a genuine issue of material fact with regard to whether defendants' proffered reasons for not selecting her for a promotion were simply pretext for otherwise unlawful discrimination. Likewise, plaintiff's arguments in her brief on appeal focus on the third step of the *McDonnell Douglas* analysis, that being whether she produced record evidence creating genuine issues of material fact with regard to whether defendants' stated reasons for not promoting her were pretext for unlawful discrimination. Accordingly, under the circumstances of this case, we will focus on the latter two steps of the *McDonnell Douglas* burden-shifting analysis on the reasonable presumption that plaintiff has made out a prima facie case of gender discrimination.

Once a plaintiff has made out a prima facie case, a presumption of discrimination will arise. *Hazle*, 464 Mich at 463. The prima facie case results in an inference of discrimination, "because [a Court] will presume [the challenged employment actions], if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.*, quoting *Furnco Constr Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978). Then, in an attempt to rebut the presumption of discrimination established by the creation of the prima facie case, "the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision[.]" *Hazle*, 464 Mich at 464.

> The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. . . . If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away. [*Id.* at 464-465 (footnotes omitted).]

For each sergeant vacancy at issue, defendants produced a selection memorandum or other non-discriminatory reasons stating specifically why the successful candidate was selected

over plaintiff. We have carefully reviewed each in turn. Each selection memorandum, as the trial court recognized, sets forth in detail why the successful candidate was selected. As a general matter, the selection memoranda detail the successful candidates' educational credentials, work experience, seniority, training, and performance during their interviews, as well as other non-discriminatory factors that led to their selection as the successful candidate. As the Michigan Supreme Court recognized in *Hazle*, 464 Mich at 465, at the third stage of the burden-shifting analysis, the plaintiff must undertake the following to withstand a motion for summary disposition:

> [T]he plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle*, *supra* at 176. As we first held in [*Town*, 455 Mich at 698], and then reaffirmed in *Lytle*, *supra* at 175-176, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination."

A plaintiff can demonstrate that the stated reasons for not being promoted are pretext by "(1) showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Feick v Co of Monroe*, 229 Mich App 335, 343; 582 NW2d 207 (1998). The pivotal inquiry at this stage is "whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision." *Hazle*, 464 Mich at 466 (citation and footnote omitted).

Plaintiff raises several arguments in support of her assertion that defendants' stated reasons for not promoting her were merely pretext for otherwise unlawful discrimination. Each will be discussed in turn. First, in support of her argument that the selection process for sergeants is inherently subjective, plaintiff asserts that the Job Fit form that is used during the hiring process "is almost entirely subjective and prone to scoring mishaps and and/or manipulations." Plaintiff also argues that the interview process "lends itself to manipulation and, in this case, unlawful discrimination." Plaintiff also points to the deposition testimony of Detective/First Lieutenant David Kelly, First Lieutenant Ann McCaffery and First Lieutenant Phillip Menna, which we have carefully reviewed. Plaintiff also directs our attention to the United States Court of Appeals for the Sixth Circuit's decision in *Brewer v New Era, Inc*, 564 Fed Appx 834 (CA 6, 2014). In that case, the *Brewer* Court stated, in the context of a racial discrimination claim, that "decisions made on the basis of subjective criteria, such as whether an employee is a team player or whether she would fit into a new corporate culture, can 'provide a real mechanism for discrimination,' and thus should be 'carefully scrutinized.'" *Id*. at 843, citing *Rowe v Cleveland Pneumatic Co, Numerical Control, Inc*, 690 F2d 88, 93 (CA 6, 1982).

A review of both Detective/First Lieutenant Kelly and First Lieutenant McCaffery's deposition testimony demonstrates that they both acknowledged there is room for human subjectivity in the interview process for the sergeant position. First Lieutenant McCaffery's deposition testimony also reflects that she made a human error in scoring plaintiff's Job Fit form for the vacant sergeant position at the Metro Post. Additionally, First Lieutenant Menna testified that while he completed a performance evaluation form for plaintiff, plaintiff had not actually

reported to him during the relevant time period. First Lieutenant Menna also conceded that he cut and pasted information from plaintiff's prior performance evaluations when completing her performance evaluation. First Lieutenant Menna acknowledged that his performance evaluation of plaintiff did not include her time spent working on the Governor's security detail. The record also confirms that on more than one occasion, notably with the Flint and Monroe (2013) sergeant vacancies, defendants interviewed more than five candidates for a position, and that as a result, male candidates who received a lower initial score than plaintiff were ultimately selected over her for a promotion. However, the key question at the final stage of the *McDonnell Douglas* analysis is "whether consideration of a protected characteristic was a motivating factor, namely whether it made a difference in the contested employment decision." *Hazle*, 464 Mich at 466. The record, viewed in the light most favorable to plaintiff, reflects that as candidates were selected for the sergeant vacancies at issue, human errors were made, perhaps time-saving methods were used, and the interview process was not entirely consistent with every position at issue. Additionally, as the trial court noted with respect to the Flint sergeant vacancy, plaintiff's male counterparts were impacted by defendants' decision to interview more than five candidates. Likewise, with respect to the Monroe (2013) Post, three of plaintiff's male counterparts had higher initial scores than the selected candidate, who would not have received an interview if less than five candidates were interviewed. However, the record evidence simply does not yield a genuine issue of material fact with respect to whether plaintiff's gender motivated defendants' decisions to not promote her on multiple occasions.

As additional evidence of pretext, plaintiff points to the fact that, in her estimation, she was "significantly more experienced than several of the male applicants who were selected for the [sergeant] positions." Plaintiff points to the fact that she has a post-graduate degree, and was working on her doctorate at the time she applied for the multiple sergeant positions. Specifically citing the vacant sergeant position at the Flint Post, plaintiff notes that the successful candidates did not have the same educational credentials as plaintiff. According to plaintiff, she was also more qualified for the sergeant position because she had taken "significant specialized training for the position, and had attended supervisory and leadership development courses[.]" In plaintiff's view, she was also more qualified than the successful candidates at the Flint Post where she had been an actual sergeant at the Detroit Post, supervising 38 other employees. Plaintiff also points as an example to the sergeant vacancy at the Lakeview Post, where she alleges that the successful candidate had only "been assigned to one work site and did not have [plaintiff's] diverse interest and experience[ ]" working as a sergeant. As further evidence of pretext, plaintiff reviews each sergeant position for which she did not receive a promotion, citing reasons why the successful applicant was less qualified than her.

We have carefully reviewed plaintiff's claims with regard to each sergeant vacancy at issue. However, even if we were to accept as accurate every one of plaintiff's assertions that the successful candidate was less qualified than her for each promotion, the United States Court of Appeals for the Sixth Circuit has recognized that while this superior "qualifications" evidence can be considered probative of pretext, it has cautioned that "[w]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender v Hecht's Dep't Stores*, 455 F3d 612, 626-627 (CA 6, 2006). Specifically, the *Bender* Court stated that "employers are generally 'free to choose among qualified candidates,' and that '[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with[.]'"

(citations omitted.) Likewise, in *Hazle*, the Michigan Supreme Court cautioned lower courts that they must not "second guess whether the employment decision was 'wise, shrewd, prudent, or competent.'" *Hazle*, 464 Mich at 464, quoting *Town*, 455 Mich at 704.

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. . . . *On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former.* In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual. [*Bender*, 455 F3d at 626-627 (emphasis supplied; citations omitted).]

The *Bender* Court went on to state that "when qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, *the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation.*" *Id.* at 627. (citation omitted; emphasis added.) More recently, in *Rachells v Cingular Wireless Employee Servs, LLC*, 732 F3d 652, 668 (CA 6, 2013), the United States Court of Appeals for the Sixth Circuit recognized, in pertinent part, as follows:

> The relative qualifications of candidates can establish triable issues of fact as to pretext where "the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.' " [*Bartlett v Gates*, 421 Fed Appx 485, 490 (CA 6, 2010)] (citing *Bender*, 455 F3d at 627–628; [*Risch v Royal Oak Police Dep't*, 581 F3d 383, 392) (CA 6, 2009)].[2]

In the instant case, aside from plaintiff's allegations that the other candidates were less qualified than her, and that the interview process was inherently subjective, the record does not contain any independent evidence of discrimination on the basis of plaintiff's gender. Additionally, we acknowledge that the record evidence, viewed in the light most favorable to plaintiff, suggests that with respect to some of the positions in dispute, plaintiff may have had (1)

---

[2] In *Rachells*, the Court noted that the record demonstrated a "discriminatory atmosphere" at the defendant employer where there was evidence that a non-minority individual was promoted over "more qualified minority candidates[,]" minority candidates were given "undeservedly poor evaluations[,]" and preferential treatment was afforded to non-minority employees in the promotion process and with discipline actions. *Rachells*, 732 F3d at 669.

marginally more seniority than some of the other successful candidates, (2) a higher level of education, as well as (3) more training experience and background. However, the record simply does not support a conclusion that plaintiff's qualifications for each of the disputed positions were so "significantly better" than the qualifications of the selected candidates that no reasonable employer would have selected the successful candidates over plaintiff. *Bender*, 455 F3d at 627. Put another way, the record does not contain evidence that plaintiff was a "plainly superior" candidate to the extent that it was simply unreasonable for other candidates to be selected over her. *Rachells*, 732 F3d at 668.

Also, as defendants point out, plaintiff concedes that defendants in fact offered her the opportunity to return to a sergeant position following the 2007 reduction in force which led to her taking a Trooper position. Plaintiff would not have had to interview again, but plaintiff, of her own volition, declined to take this opportunity, ostensibly staying in a Trooper position so that she could complete more training. In our view, plaintiff is hard-pressed to argue that defendants' stated reasons for not promoting her to sergeant in the multiple positions in dispute were mere pretext for discrimination, when she was offered another opportunity to regain a sergeant position but decided to turn it down of her own accord.

In support of her argument that her gender was a key factor defendants considered when declining to promote her, plaintiff points to this Court's decision in *Campbell v Dep't of Human Servs*, 286 Mich App 230, 240, 242; 780 NW2d 586 (2009). In *Campbell*, when considering whether the trial court erred in denying the defendants' motion for directed verdict following a jury trial on the basis that the plaintiff had not established a prima facie case of gender discrimination, this Court stated, in pertinent part, as follows:

> Viewing the evidence in the light most favorable to plaintiff, a rational trier of fact could reasonably infer, from the multiple times that plaintiff was not chosen for a position for which she was qualified and that was filled by a male, and in some cases by a male less qualified than plaintiff, that gender was a motivating factor in defendants' decision not to promote plaintiff to the Arbor position. Further, we find unpersuasive defendants' argument that another female employee was selected and promoted as a center director elsewhere. The fact that some women held high-level positions does not mean that a reasonable inference of discrimination could not be made in this particular case. [*Id*. at 240.]

While the *Campbell* Court concluded that the "multiple times" that less qualified males were chosen over the plaintiff supported a conclusion that her gender was a motivating factor in the defendants' hiring decisions, it did so in the context of evaluating the trial court's ruling on a motion for directed verdict, specifically with regard to whether the plaintiff had made out a prima facie case of gender discrimination. *Id*. at 239-240. To make out a prima facie case of gender discrimination, the plaintiff was required to present evidence that "the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 240, quoting *Hazle*, 464 Mich at 463. In the present case, the third step in the *McDonnell Douglas* burden-shifting analysis is at issue, concerning evidence of pretext, and we have highlighted above the relevant law from the United States Court of Appeals for the Sixth Circuit concerning how a plaintiff can make a showing of pretext on the basis of superior qualifications. Accordingly, *Campbell* is factually and legally distinguishable from this case.

Additionally, rejecting the defendants' arguments that the trial court ought to have granted a motion for judgment notwithstanding the verdict (JNOV) where the plaintiff had not proven that the defendant's legitimate, nondiscriminatory reasons for hiring a male candidate over plaintiff were pretext for unlawful discrimination, the *Campbell* Court held, in pertinent part, as follows:

> The evidence presented in this case was sufficient to allow the jury to believe that defendants' proffered reasons for promoting Johnson instead of plaintiff— objective scoring criteria and a written recommendation—were pretextual. Defendant claimed Johnson had the highest interviewing score, but failed to introduce the actual scores as corroborating evidence, despite their availability. This was of particular importance because interview performance apparently was the key factor in the promotion decision. Further, plaintiff's written qualifications were more than sufficient and she had been trained in the type of interviewing employed. In light of these facts, along with the evidence on the record that supported an inference of discrimination based on defendants' pattern of promoting men who were less qualified than plaintiff, plaintiff created a triable issue regarding whether defendants' stated reason for promoting Johnson was a mere pretext for gender discrimination. [*Id*. at 242 (citation omitted).]

Unlike the facts of *Campbell*, there is no suggestion on this record that defendants have failed to come forth with evidence supporting their stated reasons for not promoting plaintiff for multiple sergeant positions. Instead, aside from the Caro and Bay City sergeant vacancies, defendants have tendered a selection memorandum for each position that plaintiff was unsuccessful in obtaining to support their stated reasons for not promoting her.[3] Similarly, for the reasons stated above, in the context of considering plaintiff's alleged superior qualifications evidence, the present record also does not contain facts which lead us to conclude that a "pattern of promoting men who were less qualified than plaintiff[ ]" exists in this case. *Id*. Again, *Campbell* is distinguishable from the present case, and does not support plaintiff's contention that genuine issues of material fact exist with regard to whether defendants' proffered reasons for not promoting her are pretext for unlawful discrimination.

Plaintiff points to the decision of the United States Court of Appeals for the Sixth Circuit in *White v Baxter Healthcare Corp*, 533 F3d 381 (CA 6, 2008), a failure to promote case, where the Court recognized that genuine issues of material fact existed with regard to whether the defendants' stated reason for not promoting the plaintiff had a basis in fact, where the plaintiff possessed "better qualifications" than the candidate ultimately selected. *Id*. at 395. For example, the Court noted that the plaintiff, applying for a Midwest Regional Manager position, had "some qualifications for managerial work" and educational credentials, such as an MBA, that the successful candidate did not. *Id*. at 394. The Court also observed that the plaintiff had several

---

[3] For the Caro and Bay City Posts, defendants stated that plaintiff was not interviewed because she did not tender the proper supporting documentation, and noted that her male counterparts received similar treatment.

years of experience as a sales representative in the defendants' company and with an outside company, and had been "consistently rated as a high performer[,]" with the opportunity to become well-familiar with the products sold by the defendant. *Id*. In sum, the *White* Court stated that "this evidence of [the plaintiff's] arguably superior qualifications for the . . . regional manager position, in and of itself, could lead a jury to doubt the justifications given for [the defendant employer's] hiring decision." *Id*. For reasons unclear, the *White* Court did not cite earlier Sixth Circuit precedent governing the analysis of superior qualifications evidence in the final stage of the *McDonnell-Douglas* burden-shifting analysis. Notably, the record in *White* was also replete with independent evidence of racially discriminatory animus toward the plaintiff and other African-American employees at the company. *Id*. at 385. Thus, *White* would likely fall into the category of cases discussed in *Bender* that could likely survive summary judgment, where there was other probative evidence of discrimination toward the plaintiff in addition to the plaintiff's superior qualifications. *Bender*, 455 F3d at 626-627. However, the record in this case simply does not contain such independent evidence of discrimination. Cf. *Risch*, 581 F3d 383 (summary judgment was improperly granted where the record contained evidence that the plaintiff had superior qualifications to her male counterparts that were promoted over her, and the record contained ample evidence of discrimination, such as where officers made multiple sexually discriminatory remarks to female officers on a repeated basis).

Plaintiff also argues that summary disposition was inappropriate with regard to her retaliation claim where she established a prima facie claim of retaliation. We disagree.

In *Major*, this Court recently articulated the elements of a prima facie claim of retaliation pursuant to the CRA:

> To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Major*, 316 Mich App at 552-553, quoting *Garg v Macomb Co Comm Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005) (quotation marks and citation omitted).]

Plaintiff's claim of retaliation stems from her involvement with a community service project in Bruce Township, Michigan. During her deposition, plaintiff testified that she became involved in the community service project in Bruce Township because she was living with her father at the time, and Bruce Township was her "[h]ometown area." She was assigned to the Bruce Township MSP detachment, and because space was becoming an issue, plans were put in place to build a structure where items belonging to the MSP staff could be stored. Plaintiff stated that the Fire Chief of Bruce Township was complaining to MSP staff about the storage of MSP patrol items in the fire department. Also, there was no space for plaintiff in Bruce Township to use as a female locker room, and there was no "female place" for plaintiff to keep her personal items.

According to plaintiff, the MSP detachment in Bruce Township consisted of a room at the Bruce Township Fire Department with four lockers and a gun safe. Plaintiff complained to her supervisor, Sergeant James Kemp, about the lack of facilities for women, and was told that it

would be acceptable for her to dress at home and to drive her personal car to the detachment, where she could then pick up her patrol car for work. Plaintiff also requested one of the four lockers available to MSP troopers at the detachment, and that request was declined. According to plaintiff, her complaints to Sergeant Kemp about the lack of female facilities for her at the Bruce Township detachment were "[o]ral." When plaintiff requested a patrol car to drive to her home, she was told, presumably by Sergeant Kemp, "[w]e will try." Plaintiff was frustrated that her less senior male counterparts had access to a patrol car to take home, and she attributed the lack of a patrol car assigned to her to the complaints she raised regarding the lack of appropriate facilities for her in Bruce Township. Plaintiff was eventually given a patrol car to take home in the last month of her time at the Bruce Township detachment.

Subsequently, plaintiff became involved in the community project to build a storage structure at the Bruce Township MSP Post, and local high school students were also a part of the project to develop what plaintiff termed an "auxiliary garage." As the project developed, and more members of the community became involved, plaintiff had a discussion with Lieutenant Michael Shaw over the telephone about the project, and he told plaintiff that her involvement was acceptable, as long as she was not purporting to represent the MSP or acting in her capacity as a trooper. In plaintiff's words, she received permission from Lieutenant Shaw to "to do whatever I wanted to do on my own time[.]" Plaintiff recalled that at one point the media became involved in the auxiliary garage project, presumably by reporting on it, and she testified about a short conversation with First Lieutenant Menna where he told plaintiff he had read an article in the newspaper about the project, and reminded her, "[r]emember, we don't talk to the media." Plaintiff further testified that she responded, "yeah, I don't talk to the media. That was the extent of the conversation." Plaintiff was subsequently handed a copy of the written reprimand at issue in this case in October of 2013.

Plaintiff further testified regarding the incident in Bruce Township that led to her being reprimanded. For example, plaintiff testified that she was not wearing a MSP t-shirt on a day that she gave a presentation concerning the auxiliary garage, but clarified that it was a t-shirt that had a "buffalo soldier of a police officer with a cowboy hat waving a sword riding a buffalo with wheels on it." Moreover, she conceded that her t-shirt had a lightning bolt on it, "surrounded by a badge[,]" and the MSP emblem also has a lightning bolt on it. The subject of the meeting where plaintiff gave a presentation was the building of the auxiliary garage, community support for the structure, and fund raising. During the meeting, plaintiff did not state that the auxiliary garage would be primarily used to store MSP equipment. Plaintiff also stated that she was "very clear" and "articulated that I was not working as a member of the state police[,]" the meeting was not sponsored by the MSP, and the auxiliary garage was not "a state police building; . . . this was not a state police structure used for any state police purpose." Specifically, plaintiff stated, in pertinent part, as follows:

I was very clear, and any person who was in attendance at that meeting walked away knowing that was Citizen Darby O'Dell working on behalf of Darby O'Dell who lives and works in the community and this has nothing to do with the Michigan State Police.

Plaintiff also included in the lower court file a copy of the written warning that she received arising from the incident in Bruce Township. On October 21, 2013, plaintiff received the following warning:

> You have engaged in the following misconduct:
>
> Insubordination or disrespect toward superior authority after being ordered to not involve yourself or the Department any further into the erecting of an external building at the site of the MSP detachment in Bruce Twp.
>
> On October 2, 2013, an article in the Romeo Observer [newspaper] noted a 'letter' you sent to the reporter. In the article you are referred to as [Trooper] O'Dell multiple times and that you wished to thank those companies that had participated in the process thus far[,] and if there were further questions to contact you via email.

The written warning provided that plaintiff had violated "O.O.1, Article 4, Section 4.23a" of the governing [MSP] regulations on October 2, 2013, and noted as "[p]revious [a]ction [t]aken . . . :"

> [Trooper] O'Dell was ordered not to participate in any activity or conversations with regards to the building of an external garage at the location of the MSP Detachment by Bruce Twp. officials. [Trooper] O'Dell had previously involved herself in the discussion and process of getting this building built representing the interests of the Michigan State Police as a trooper. She also spoke at a Bruce Township meeting and with a reporter representing herself as a Michigan State Police Trooper during which she gave her personal email to solicit interest from outside companies who wished to donate to the cost of the structure.

According to plaintiff, "[t]he written reprimand came on the heels of [plaintiff's] complaints related to the gender discrimination in [the MSP]" and amounted to "blatant retaliation[.]"

Even accepting that plaintiff has made out the first three elements of a prima facie claim of retaliation, we agree with the trial court's assessment that plaintiff did not produce evidence to create a genuine issue of material fact with regard to whether her October 2013 written reprimand was causally connected to the complaints of discrimination that she raised while working at the MSP detachment in Bruce Township.

In *Aho v Dep't of Corrections*, 263 Mich App 281, 289; 688 NW2d 104 (2004), this Court set forth the applicable legal principles for establishing the element of causation in a retaliation claim:

> To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a "significant factor" in the employer's adverse employment action, not merely that there was a causal link between the two events. [*Barrett v Kirtland Comm College*, 245 Mich App 306, 325; 628 NW2d 63 (2001)]. Thus, mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between

such action and the protected activity.  [*Mitan v Neiman Marcus*, 240 Mich App 679, 681–682; 613 NW2d 415 (2000)].

The record evidence, viewed in the light most favorable to plaintiff, confirms that plaintiff raised complaints about the lack of facilities for women to change, and her lack of a patrol car to take home, while working at the Bruce Township MSP detachment from 2012 until 2013.  Subsequently, plaintiff received a written reprimand in October 2013 arising from her activities with a community project involving the building of an auxiliary garage at the Bruce Township Fire Department to store equipment for the MSP.  However, the record evidence does not lead to a reasonable conclusion that there is a "clear nexus" between plaintiff's alleged protected activities and the subsequent written reprimand.  *Aho*, 263 Mich App at 289.  Aside from plaintiff's subjective interpretations regarding how and why the relevant events unfolded as they did, the record does not yield any indication that the complaints plaintiff raised regarding (1) the lack of female facilities at the Bruce Township detachment and (2) her not having her own patrol car to take home while her less senior male counterparts did, factored significantly in the decision to reprimand her for her involvement with the auxiliary garage project.  *Id*.[4] Moreover, by plaintiff's own admission in her deposition, she was cautioned by First Lieutenant Menna to not speak to the media during the auxiliary garage project, and her ultimate written reprimand disciplined her for her involvement with the media while representing herself as a MSP trooper.  On appeal, plaintiff does not argue that she did not speak with the media during the auxiliary garage project, and she does not dispute her involvement with the auxiliary garage project.  Accordingly, where the record evidence does not yield genuine issues of material fact with respect to whether plaintiff's complaints while working at the Bruce Township detachment were a significant factor in defendants' decision to reprimand her for her involvement in the auxiliary garage project, the trial court properly granted defendants' motion for summary disposition regarding plaintiff's claim of unlawful retaliation.

Affirmed.  Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

---

[4] While not dispositive of this issue, it is noteworthy that plaintiff's initial complaints were raised to her supervisor, Sergeant Kemp, while working at the Bruce Township detachment, and she was later reprimanded by First Lieutenant Menna.